FILED

2007 Dec-17  PM 02:54
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JOANN G. RICE and KATHY CALDWELL, | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | 7:06-CV-00352-LSC |
| | ] | |
| CROTHALL HEALTHCARE, INC., | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.     Introduction.

The Court has for consideration defendant Crothall Healthcare, Inc.'s

("Crothall") Motion for Summary Judgment, which was filed on March 30,

2007.   (Doc. 29.)   Plaintiffs Joann Rice and Kathy Caldwell have sued

Crothall for violations of Title VII and the Equal Pay Act.   (Docs. 1 & 2.)

Defendant has moved for summary judgment on all of Plaintiffs' claims.

(Doc. 29.)   The issues raised in Defendant's Motion for Summary Judgment

have been briefed by Defendant, but Plaintiffs have failed to respond.[1]

Nonetheless, the issues are now ripe for decision.  Upon full consideration

of the legal arguments and evidence presented, Defendant's motion is due

to be granted.

II.    Facts.[2]

Crothall Healthcare, Inc. is a facilities management company to which

hospitals and healthcare companies outsource housekeeping.  Crothall

acquired Stroh Healthcare in 2002, and integrated Stroh into the company

over the next few years.[3]  Sometime around July 2002, Stroh/Crothall

---

[1]This Court's Initial Order (Doc. 3), entered on February 27, 2006, establishes the briefing schedule for motions for summary judgment.  *Id.* at 13-14.  According to the Initial Order, Plaintiffs' responsive submission was to be filed "not later than 21 days after the motion for summary judgment is filed."  *Id.* at 13.  Defendant's motion was filed on March 30, 2007.  (Doc. 29-1.)  Plaintiffs' response was originally due on April 20, 2007.  An order issued by this Court on April 23, 2007, allowed Plaintiffs to file their response five days later on April 30, 2007.  Furthermore, the Court notified Plaintiffs' counsel of his failure to respond, but to date Plaintiffs have filed no response to Defendant's Motion for Summary Judgment.

[2]The facts set out in this opinion are gleaned from the Joint Status Report (Doc. 28), the Defendant's submissions of facts claimed to be undisputed, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[3]The company will be hereinafter referred to as Stroh/Crothall for the period in which Stroh was integrated into Crothall.

entered into servicing contracts with Bryce Hospital (hereinafter referred to as "Bryce") and William D. Partlow Developmental Center (hereinafter referred to as "Partlow"), both located in Tuscaloosa, Alabama.  PFMI, a competitor of Stroh/Crothall, was the previous service provider to Bryce and Partlow.

When Stroh/Crothall took over, the company allowed former PFMI employees to apply for positions with Stroh/Crothall.  Stroh/Crothall hired Joann Rice, Mike Lackey, and Ottia Birl, all former PFMI employees.  The pay scale for new hires stated that supervisors start at $9.00 an hour, but could be paid up to $9.75 an hour.  Joann Rice was hired to be a supervisor, with a starting pay rate of $9.00 an hour.  Mike Lackey, a white male, was also hired to be a supervisor, but he received a starting pay rate of $10.00 an hour.  Ottia Birl, an African-American female, was hired as a supervisor at the same time Lackey was hired, and she also received a starting pay rate of $10.00 an hour.  (Grandy Dep. at 36.)  In July 2003, Crothall hired Kathy Caldwell to serve as a supervisor, with a starting pay rate of $7.50 an hour.

In making the management transition after Stroh/Crothall took over the service contract, Jack Grandy, a white male, was assigned to assist in

the transition.  Grandy worked as the Stroh/Crothall unit director of Bryce Hospital, and Flo Lively served as the Stroh/Crothall unit director for Partlow.

In July 2003, Grandy was notified by his regional supervisor that he should limit overtime by all employees, including hourly supervisors. Consequently, Grandy sent a memorandum to all supervisors directing them to limit or eliminate overtime hours.

In November 2003, Joann Rice complained to Kirby Collins, regional director and Grandy's immediate supervisor, regarding alleged overtime Lackey received, Lackey's allegedly higher rate of pay, and her belief that Lackey benefitted from Grandy's favoritism.  Following Rice's complaint, Collins and two regional managers, Kim Desarno, and Kevin Brey, visited Bryce later in November 2003.  Desarno met with various employees, including Rice and Caldwell.  After meeting with hourly supervisors, Desarno met with Grandy.

In early March 2004, Grandy transferred to another Crothall facility in Youngstown, Ohio.  Flo Lively replaced Grandy as unit director for Bryce. On March 16, 2004, Rice was terminated from Crothall.  Lively, the unit

director at the time of Rice's firing, informed Rice that the termination was necessary because of Rice's purported failure to ensure proper cleanliness in an area of Bryce Hospital on the previous day.  At the time Rice was terminated, Grandy was no longer employed at the Crothall facility in Alabama.

Caldwell resigned her employment with Crothall by letter on March 29, 2004.  When Caldwell resigned no one had threatened to terminate her employment, nor had she ever been formally disciplined or reprimanded.

Rice received at least two performance evaluations during the course of her employment with Crothall, and Lackey also received an evaluation while employed by Crothall.  Caldwell, in contrast, did not receive a performance evaluation while employed by Crothall.

Plaintiffs Rice and Caldwell filed charges of discrimination with the Equal Employment Opportunity Commission on June 8, 2004, and  received Right to Sue Letters on October 7, 2005.  Plaintiffs subsequently filed their complaint against Defendant on February 17, 2006.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)(quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

     A.   Title VII.

A plaintiff may employ direct, circumstantial, or statistical evidence to prove intentional racial discrimination.  *Standard v. ABEL Serv.*, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  In this case, Plaintiffs have offered no direct or statistical evidence and thus must rely on circumstantial evidence to prove their case.  Courts review Title VII claims based on circumstantial evidence by applying a three-step burden shifting analysis, which was set out in the United States Supreme Court cases of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of racial discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 802.   Once the plaintiff has

demonstrated a *prima facie* case exists, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the [adverse employment action]." *Id.* This burden is "exceedingly light. . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)(quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)(citation and internal quotation marks omitted)). Lastly, the burden returns to the plaintiff to prove by a preponderance of the evidence that the defendant's reasons were simply pretext for discrimination. *Burdine*, 450 U.S. at 253 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

To establish a *prima facie* case of racial discrimination, a plaintiff must demonstrate: (1) that she belongs to a protected class; (2) that she was qualified to perform her job; (3) that she was subjected to adverse employment action; and (4) that the employer treated similarly situated employees outside of the protected class more favorably. *See Knight v.*

*Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1316 (11th Cir. 2003)(citing *McDonnell Douglas Corp.*, 411 U.S. at 802).[4]

      1.    Disparate Pay.

Plaintiffs allege that defendant Crothall Healthcare discriminated against them on the basis of race and gender by paying them less than a similarly situated hourly housekeeping supervisor, Lackey.[5]  To establish a *prima facie* case of pay discrimination, a plaintiff must show: (1) she belongs to a protected class; (2) she received lower wages; (3) similarly situated comparators received higher wages; and (4) she was qualified to receive the higher wage.[6]  *See Cooper v. Southern Co.*, 390 F.3d 695, 735

---

[4]In this case, Plaintiffs can demonstrate that they are members of a protected class and that an employee outside of the protected class received a higher rate of pay.  Thus, it is necessary to consider whether Plaintiffs can establish elements (2), (3), and (4) of the *prima facie* case, that they were qualified to perform their jobs, that they were subject to an adverse employment action, and that the employee outside the protected class was a similarly situated comparator.

[5]Lackey holds the same position within Stroh/Crothall and has job-related characteristics similar to that of both Plaintiffs; therefore, Plaintiffs allege that Lackey is a similarly situated comparator.  *See MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 n.16 (11th Cir. 1991)(noting that in a comparator analysis a plaintiff is compared with another person or persons with similar job-related characteristics in a similar situation to assess whether plaintiff has been subjected to different treatment than those similarly situated).

[6]The Court notes that the *prima facie* four step framework set out in *Cooper* is the same framework established in *McDonnell Douglas Corp.,* but tailored to fit the facts of pay discrimination under Title VII.  "The facts necessarily will vary in Title VII cases, and the

(11th Cir. 2004).  *See also Knight*, 330 F.3d at 1316; *McDonnell Douglas Corp.*, 411 U.S. at 802.  Defendant alleges that Plaintiffs are unable to establish a *prima facie* case of pay discrimination because there is no evidence that Plaintiffs received lower wages or that either Rice or Caldwell were qualified to receive more pay than they received.  (Doc. 29-1 at 13.)

Plaintiffs are required to prove all four elements of the analysis set out in the *Cooper* case above to demonstrate the existence of a *prima facie* case.  Plaintiffs can establish that they are members of a protected class since both are African-American females.  (Doc. 28.)  Therefore, it is only necessary to consider whether Plaintiffs can establish the remaining elements to show a *prima facie* case of pay discrimination.

In considering whether Plaintiffs received lower wages, it is undisputed that Rice's starting wage with Crothall was $9 per hour and Caldwell's was $7.50 per hour, both within the company's pay scale for supervisors. (Rice Dep. at 50.)  However, because Lackey, a white male who was employed by Stroh/Crothall in the same position as Plaintiffs, received a higher starting

---

specification above of the *prima facie* proof required from respondent is not necessarily applicable in every respect to differing factual situations."  *McDonnell Douglas Corp.*, 411 U.S. at 802 n.13.

rate of pay, this Court will assume that Plaintiffs have demonstrated that they received lower wages.

With regard to Plaintiffs' qualification to receive the higher wages, it is undisputed that the plaintiffs were working and performing their job as supervisors; therefore, Plaintiffs were arguably qualified to receive the higher wage.  The Court will assume that Plaintiffs established this element as well.

Finally, while Plaintiffs have shown that Lackey received a higher wage, they have failed to demonstrate that Lackey was a similarly situated comparator.  In a comparator analysis, "the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him."  *MacPherson v. Univ. of Montevallo,* 922 F.2d 766, 774 (11th Cir. 1991).  A comparator must be "similarly situated in all relevant aspects" including, but not limited to, similar levels of education, experience, job responsibilities, and seniority.  *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997);  *Cooper*, 390 F.3d at 735, 743-44; *Miranda v. B&B Cash Grocery,* 975 F.2d 1518, 1529

(11th Cir. 1992)(stating that a proper comparator is one who is "in a similar situation" to that of plaintiff).  Lackey was significantly different from Plaintiffs.  Lackey had infinitely more supervisory experience than Plaintiffs. In addition, he received a higher pay in his previous job and would not accept the job at Crothall without that higher pay.  Since Lackey had more experience, Lackey does not qualify as a proper comparator.  *See Cooper*, 390 F.3d at 743 ("Seniority may constitute a legitimate, non-discriminatory justification for differences in compensation.").  Since Plaintiffs failed to identify a comparator with similar experience, they have failed to establish the third element of a prima facie case of discrimination in compensation and have thereby failed to meet their burden of proof.

Since Plaintiffs fail to establish a *prima facie* case of pay discrimination, no further analysis is required.  However, even if Plaintiffs did present a *prima facie* case, Defendants have produced legitimate, non-discriminatory reasons for the different treatment, such as work experience, prior salary, and overall contribution.  *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  Thus, this Court will consider whether the plaintiff's evidence "cast sufficient doubt" to allow a reasonable jury

to conclude that the defendant's proffered reasons were pretextual. *Combs*, 106 F.3d at 1538.  In evaluating the proof of pretext, the district court decides whether the plaintiff's evidence shows "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3rd Cir. 1996)(internal quotation marks omitted)).

Here, Plaintiffs rely only on unsupported, conclusory statements that the non-discriminatory reasons Defendant proffers for different levels of pay were pretextual.  For example, Plaintiffs, both African-American females, simply assert that they were paid less than Mike Lackey, another housekeeping supervisor, because of their race and gender.  "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988)(quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.

1987)).  Kirby Collins, Southern Regional Manager for Crothall, testified that the company's pay rates are determined by a variety of non-discriminatory factors, including previous work experience; and Plaintiffs offer no evidence in response to demonstrate that they had the same or similar past work experience as to entitle them to a higher pay rate.  (Doc. 29-31 at ¶14.) Without further support, the fact that Lackey was paid more per hour than Plaintiffs does not defeat a motion for summary judgment. The Plaintiffs' conclusory allegations simply do not constitute "'significant probative' evidence on the issue [of pretext] to avoid summary judgment." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).  Moreover, the fact that Crothall paid both Lackey and Ottia Birl, an African-American female, at the same rate of pay further supports the conclusion that Defendant's proffered reasons for the pay differences were not pretextual, but instead based on non-discriminatory factors.  Therefore, summary judgment is due to be granted with respect to Plaintiffs' claim of

discrimination based upon disparate pay.

      2.     Overtime Pay.

Plaintiffs contend that Stroh/Crothall further discriminated against them by allowing Lackey to continue to receive overtime compensation after July 2003, while they were not allowed to receive overtime pay.  However, Defendant alleges that Plaintiffs' discrimination claim with regards to overtime payment is time barred under the 180-day time limitation prescribed by Title VII.

Under § 706 of Title VII, 42 U.S.C. § 2000e-5(e)(1), "only those unlawful employment practice[s] that are complained of in a timely-filed EEOC charge of discrimination to the EEOC can form the basis for Title VII liability." *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005), *aff'd*, 550 U.S. 1 (2007).  A claim arising in a "non-deferral" state, like Alabama, that does not have its own EEOC-like administrative agency, is considered timely if the applicable charge was filed within 180 days "after the alleged unlawful employment practice occurred." *Id.* at 1178.

Here, the unlawful employment practice of which Plaintiffs

complained was their inability to receive overtime compensation following a July 2003 company directive stating that overtime should be reduced, if not completely eliminated, for all employees.  Plaintiffs complained to Kirby Collins around November 5, 2003 about the overtime compensation and alleged favoritism of Lackey.  (Rice Dep. at 173-74); (Collins Decl. at ¶ 9). Following Plaintiffs' internal complaint, Collins and DeSarno conducted an investigation, and took action to ensure that employees no longer received overtime compensation.  Collins testified that he regularly monitored the payroll files after that investigation to make certain that no employees received overtime.  (Collins Decl. at ¶ 17); (DeSarno Dep. at 54-55).

Plaintiffs each filed a charge of discrimination with the EEOC based on this alleged overtime discrimination on June 8, 2004.[7]  (Doc. 29-1, p. 17.) Under Title VII, for Plaintiffs' overtime discrimination claim to be timely, the complained of discrimination would have had to occur after December

---

[7]Plaintiffs were required by this Court's Uniform Initial Order to file and present evidence showing the filing dates of their EEOC charges.  However, neither Plaintiff filed her EEOC charge with this Court, and both have failed to present evidence regarding the filing dates of the charges.   Defendant has attached Rice's EEOC charge to the deposition, but the filing date is not indicated anywhere on the EEOC charge, and Rice did not write the filing date next to her signature as the EEOC complaint form requires. (Rice Dep. at Exh. 16.)

11, 2003.  However, the record demonstrates that Lackey did not receive overtime compensation following the November 2003 investigation conducted by Kim DeSarno and Kirby Collins.  (Desarno Dep. at 55); (Collins Decl. at ¶18).  Therefore, because the Plaintiffs did not file their charge of discrimination with the EEOC within 180 days of the alleged discriminatory actions, their claims are time-barred.

### 3.    Retaliatory Discharge.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relation between the two events.  *Cooper*, 390 F.3d at 740; *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).  Here, neither Plaintiff is able to establish a *prima facie* case of retaliation.

### a.    Caldwell.

Caldwell is not able to establish that she engaged in statutorily protected expression or that she suffered an adverse employment action.  There is no evidence that Caldwell engaged in any statutorily protected

activity prior to the termination of her employment with Crothall.[8]  Caldwell

never complained to her supervisor, Jack Grandy, regarding unfair

treatment.  (Caldwell Dep. at 58, line 2-4.)  Although Rice complained of

unfair treatment during a July 2003 meeting, Caldwell testified that she did

not speak at all during that meeting. (Caldwell Dep. at 51-60.)  Instead, she

allowed Rice to speak on her behalf.  Although Caldwell did discuss her

beliefs about unfair treatment with Kim DeSarno and Kirby Collins during

their November 2003 internal investigation, a discussion during an internal

investigation does not constitute statutorily protected activity.   The

"participation" clause of 42 U.S.C. § 2000e-3(a), defining "statutorily

protected activity," does not protect statements made during an internal

investigation, but instead protects employees testifying in an investigation

conducted in conjunction with the filing of EEOC charges.  *EEOC v. Total*

*Systems Services*, 221 F.3d 1171, 1174 (11th Cir. 2000)(where an EEOC

---

[8]"Statutorily protected activity" for the purposes of Title VII is defined in 42 U.S.C. § 2000e-3(a).  Under this provision, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

complaint was not filed before Warren's termination, her taking part in an internal investigation did not constitute protected expression under the participation clause of Title VII).  Since the EEOC complaint was not filed until after Caldwell resigned, her participating in the internal investigation does not constitute "statutorily protected activity."

In addition, an adverse employment action is a necessary element to a *prima facie* case of retaliation.  Because Caldwell voluntarily resigned from her position at Stroh/Crothall, the only possible adverse employment action she could have faced is constructive discharge.  To successfully demonstrate constructive discharge, a plaintiff must show that working conditions were "so intolerable that a reasonable person in her position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997).  *See also Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003); *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993).  In assessing a claim of constructive discharge, the court employs an objective standard rather than a subjective standard based on the plaintiff's feelings. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998).  The burden a plaintiff must surmount to demonstrate

constructive discharge is "quite high." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001)(holding that being berated in public does not sufficiently demonstrate constructive discharge). *See also Beltrami v. Special Counsel, Inc.*, 170 Fed. Appx. 61, 62 (11th Cir. 2006).

Caldwell's proffered reasons for resignation do not show working conditions so intolerable that a reasonable person in her position would have been compelled to resign. Caldwell testified that at the time of her resignation, no one had threatened to fire her.   (Caldwell Dep. at 69.) Instead, she decided to resign primarily to avoid being written up for failing to complete the day's assigned work.  Caldwell testified that on March 29, 2004, the day she tendered her resignation, Ottia Birl informed "all of the supervisors" that they would be written up if the buildings were not cleaned by 2 p.m.  *Id.* at 42.   After assessing the work that she would need to complete that day, Caldwell decided that it was an impossible task and, as a result, she should resign.  *Id.* at 43.  While Caldwell testified that she felt "forced" to resign because Flo Lively had allegedly lied to her about Dr. Shambly's comments on Caldwell's absence from the Harper Center, Dr. Shambly, after learning of Lively's remarks, told Caldwell that she had never

made such comments.  *Id*. at 44-45.   As further evidence of the "harsh retaliation" she faced, Caldwell also points to an incident wherein Lively accused her of tampering with cleaning supplies during a weekend shift that she did not even work.  *Id*. at 45-46.   However, it is apparent from the record that Caldwell received no written reprimands because of either of the above incidents.

Caldwell's contentions about the alleged retaliation she suffered do not establish constructive discharge.  *See Beltrami v. Special Counsel, Inc.*, 170 Fed. Appx. 61 (11th Cir. 2006)(finding that facing difficult tasks even if one anticipated being fired if one failed to complete them is not sufficient to show working conditions so intolerable that one must quit immediately); *Summerlin v. M&H Valve Company*, 167 Fed. Appx. 93 (11th Cir. 2006)(holding that the district court properly granted summary judgment on plaintiff's retaliation claim because the employee failed to show that a written reprimand constituted an adverse employment action).   The possibility of receiving a written reprimand for failing to complete the day's assigned work, while perhaps unpleasant, does not create a work environment so intolerable that a reasonable person would feel forced to

quit immediately.[9]  Caldwell's complaints about Lively's alleged lie, as well as her comments about tampering with cleaning supplies, likewise do not meet the requisite threshold showing of constructive discharge.[10]  Thus, Caldwell fails to provide the second element necessary and cannot establish a *prima facie* case of retaliation.  Therefore, summary judgment is due to be granted with respect to Plaintiff Caldwell's claim of retaliatory discharge.

        b.    Rice.

Rice also fails to establish a *prima facie* case of retaliation because she cannot provide a causal connection between her statutorily protected

---

[9]"Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast."  *Garner v. Wal-Mart Stores*, 807 F.2d 1536, 1539 (11th Cir. 1987).

[10]Factual analysis of Eleventh Circuit case law shows the plaintiff's high burden in proving constructive discharge.  Compare Caldwell's allegations with *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1015 (11th Cir. 1994)(holding that district court's finding of constructive discharge was proper in view of evidence showing plaintiff being placed on probation, receiving unjustified evaluations, and repeatedly screamed at so loudly that employer's "spit was flying in [plaintiff's] face"); and *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 552 (11th Cir. 1997)(upholding the finding of constructive discharge where plaintiff's employer stripped her of job responsibilities, gave her a desk with no chair, and instructed coworkers not to speak to her).

expression and her termination from Crothall.[11]

To show a causal connection between the employee's protected activity and the adverse action taken by the employer, "a plaintiff must show that the decision-makers were aware of the protected conduct, and that protected activity and the adverse actions were not wholly unrelated." *Id.* (quoting *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)(internal quotation marks omitted)).  The Eleventh Circuit has recognized the causal connection in some Title VII retaliation claims by using the "cat's paw" theory.  In order for this theory to apply, the plaintiff must show that the decision-maker acts as the "cat's paw" for the harasser by carrying out the harasser's recommendation to terminate the plaintiff without making her own independent determination of the employee's situation.  *See Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998); *McShane v. Gonzales*, 144 Fed. Appx. 779, 791 (11th Cir. 2005).

In this case, Rice testified about her belief that, before Grandy

---

[11]In November 2003, Rice complained to both Kirby Collins and Kim DeSarno about the overtime pay Lackey received.  On March 16, 2004, more than four months later, Flo Lively fired Rice.

transferred, he had been planning to fire her for her complaints, and that he had instructed Lively to do so once she took over as unit director at Bryce.  (Rice Dep. at 164-65.)  However, the facts of the case at bar show that the "cat's paw" theory does not apply.  Here, the following facts are undisputed: first, Flo Lively was the decision-maker in Rice's termination (Lively Decl. at ¶ 14); second, Lively was unaware of Rice's complaints (*Id.* at ¶ 17); and third, not only was Grandy no longer the Crothall unit director in charge of Bryce, but he was employed at a facility in Ohio when Rice was terminated (Rice Dep. at 142; Grandy Dep. at 70).  Because Lively did not know of Rice's complaints, and Grandy, the alleged harasser, was working in Ohio, the cat's paw theory of causation is inapplicable.[12]  Likewise, even without the cat's paw theory, Rice is unable to claim that Lively fired her in retaliation for the complaints since it is undisputed that Lively was unaware of the complaints when she terminated Rice.   Rice cannot demonstrate the necessary causal connection between her statutorily

---

[12]Although "close temporal proximity" between the employee's protected activity and the adverse employment action may demonstrate that the two may be related, the four months that lapsed between the two in the case at bar do not demonstrate a sufficiently close temporal proximity to show any causal relation.  *See Shannon*, 292 F.3d at 716-17.

protected complaints and her termination, and, thus, fails to establish a *prima facie* case of retaliatory discharge.

Even if Rice were able to establish a *prima facie* case of retaliatory discharge, Defendant argues that summary judgment is appropriate because Rice cannot present sufficient evidence that Defendant's proffered legitimate, non-retaliatory reasons for Rice's termination are pretextual. Lively asserts that she terminated Rice based on Rice's failure to properly supervise her assigned cleaning areas or her employees. (Lively Decl. at ¶ 15.) Moreover, Rice's extensive disciplinary records indicated that her next write-up should result in termination. *Id.* at ¶ 16. Although Rice testified that if the termination were truly based on her disciplinary records, she would have been fired long before March 2004; such speculation is not sufficient to establish pretext. *See McShane*, 144 Fed. Appx. at 792 (finding plaintiff's speculation that employer would have terminated plaintiff much earlier had its reasons for termination truly been legitimate insufficient to establish pretext)*; see also Wascura v. City of S. Miami*, 257 F.3d 1238, 1245 (11th Cir. 2001). Accordingly, summary judgment is due to be granted with

respect to Plaintiff Rice's retaliation claim.[13]

      B.    Equal Pay Act.

Plaintiffs claim that Crothall Healthcare violated the Equal Pay Act by paying a male counterpart, Lackey, a higher salary than they received for performing equal or equivalent work. Defendant alleges that, even if Plaintiffs establish a *prima facie* case of an Equal Pay Act violation, the claim should still fail because the defendant has fulfilled its burden of proof by setting out an affirmative defense that the pay difference was based on Lackey's prior supervisory experience.

To establish a *prima facie* case of an Equal Pay Act violation, a plaintiff must show that her employer paid employees of opposite genders different rates of pay for "equal work for jobs which require 'equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003)(quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) and 29 U.S.C. § 206(d)(1)).

---

[13]Based on the Court's finding that Crothall did not engage in retaliatory discharge with respect to either Plaintiff, it is unnecessary to address the existence of a pattern of discrimination.

After the employee establishes a *prima facie* case, the burden then shifts to the employer to prove by a preponderance of the evidence that the pay differences are due to: "(I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor other than sex." *Steger*, 318 F.3d at 1078 (quoting 29 U.S.C. § 206(d)(1)). *See also Corning Glass Works v. Brennan,* 417 U.S. 188, 195-97 (1974); *Mulhall v. Advance Sec., Inc.*,  19 F.3d 586, 590 (11th Cir. 1994); *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir. 1991).   The employer's burden at this stage is a heavy one, requiring the employer to demonstrate that the employee's gender "provided no basis for the wage differential." *Irby*, 44 F.3d at 954 (quoting *Mulhall*, 19 F.3d at 590).

If the employer is unable to meet this burden, judgment must be entered for the plaintiff.  *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992).   If the employer does overcome this burden, the plaintiff must then rebut the affirmative defenses by offering affirmative evidence that the employer's explanation is either a pretext or a "post-event justification" for gender discrimination.  *Irby,* 44 F.3d at 954.

If plaintiff's rebuttal creates an inference of pretext, then summary judgment is not appropriate.  *Id*.

In this case, Plaintiffs have established a *prima facie* case of an Equal Pay Act violation by showing that Lackey received a higher rate of pay than they received for performing the same job as hourly housekeeping supervisors.  Defendant, however, overcomes its burden of providing the affirmative defense of "any other factor other than sex."  29 U.S.C. § 206(d)(1).  Specifically, Defendant claims that the pay differential between Lackey and Plaintiffs is due to Lackey's prior supervisory experience with PFMI, the company that managed Bryce and Partlow's housekeeping services prior to Stroh/Crothall.   Jack Grandy, Crothall unit director at Bryce Hospital, testified that Lackey would not accept the position with Crothall unless he was paid a greater amount than the company's maximum pay scale allowed.  (Grandy Dep. at 36.)   Grandy noted that the pay scale was flexible, allowing the company to pay supervisors based on job experience. *Id*.  Grandy further testified that Lackey, as well as Ottia Birl, received a higher salary than Plaintiffs due to the fact that he had worked as an assistant director at Bryce Hospital for PFMI, and had more experience than

either of the Plaintiffs. *Id.* at 41. Though prior salary alone is insufficient to constitute the affirmative defense of "any factor other than sex," an employer can overcome its burden of proof by showing that it relied on prior salary *and* experience in setting an employee's salary. *Irby*, 44 F.3d at 955. Plaintiffs do not rebut the Defendant's proffered reasons for Lackey's higher pay. For the foregoing reasons, summary judgment is due to be granted with respect to Plaintiffs' Equal Pay Act Claims.

V.     Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be granted. A separate order in conformity with this opinion will be entered.

Done this <u>17th</u> day of <u>December 2007</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153